**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

**RUSTY ROY MERO**
**ADC #119803**                                                                                         **PLAINTIFF**

**V.**                              **CASE NO. 1:13CV0040 BD**

**INDEPENDENCE COUNTY JAIL, et al.**                                             **DEFENDANTS**

**ORDER**

**I.     Background:**

Rusty Roy Mero, an Arkansas Department of Correction inmate formerly housed at the Independence County Jail ("Jail"), filed this lawsuit pro se under 42 U.S.C. § 1983, alleging that Jail officials failed to protect him from other inmates. Specifically, he claims that, over the course of several days, Jail inmates threw urine either in his cell or on his person on four occasions. He further alleges that Jail officials knew that he was being threatened, but failed to protect him. He names five Jail officers as Defendants.

Defendants have now moved for summary judgment on Mr. Mero's claims against them. (#40) Mr. Mero has not responded to the Defendants' motion, and the time for doing so has passed.

Based on the evidence presented, questions of fact remain precluding judgment as a matter of law in the Defendants' favor on Mr. Mero's failure-to-protect claim. Therefore, Defendants' motion for summary judgment (#40) is GRANTED in part, and DENIED in part. Mr. Mero's retaliation claim and his claims for compensatory damages are DISMISSED.

## II. Analysis:

### A. Standard

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine dispute as to any material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246, 106 S.Ct. 2505 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). If the moving party meets this burden, the nonmoving party must respond by coming forward with specific facts establishing a genuine dispute for trial. *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). When the nonmoving party cannot come forward with enough evidence to establish a necessary element of the case, the moving party is entitled to judgment as a matter of law. *Celotex Corp.,* 447 U.S. at 322–23, 106 S.Ct. at 2552.

### B. Failure to Protect - Defendants Garcia, Branscom, Webb, and Stone

Jail officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Mr. Mero was a pretrial detainee at the time the incidents giving rise to this lawsuit occurred. Pretrial detainees' § 1983 claims are analyzed under the fourteenth amendment's Due Process Clause, rather than under the eighth amendment, which prohibits cruel and unusual punishment. *Kahle*

*v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007) But this distinction, " makes little difference as a practical matter, though: Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment." *Id*.

The Court of Appeals for the Eighth Circuit has not "establish[ed] a clear standard for pretrial detainees," and "repeatedly [has] applied the deliberate indifference standard as is applied to Eighth Amendment claims made by convicted inmates." *Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010) (quoting *Vaughn v. Greene Cnty., Ark.*, 438 F.3d 845, 850 (8th Cir. 2006) (internal quotation marks omitted)).

In order to establish a constitutional violation, Mr. Mero must show that his continued incarceration in the male housing unit at the Jail posed a substantial risk of serious harm (objective component), and that County Jail officials actually knew of, but disregarded or were deliberately indifferent to, Mr. Mero's health or safety (subjective component). *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003); *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998).

In his complaint and deposition testimony, Mr. Mero alleges that while he was housed in the male housing unit at the County Jail, he confiscated a cellular phone and turned the telephone in to Defendant Garcia as contraband. (#42-1 at p.4) As a result, he claims, other inmates threatened to "jump him" and specifically to pour urine and feces into his cell. (#2 at p.4, #42-1 at p.4) The day after Mr. Mero turned in the cellular

phone, an unidentified inmate poured urine under his cell door and onto Mr. Mero's cell floor during the night. After cleaning his cell, Mr. Mero informed the guard on duty that he "feared for [his] safety, and wrote a grievance concerning the incident."[1] (#4 at p.2) Mr. Mero testified in his deposition that he told Defendants Branscom, Garcia, and Stone that he was consistently being threatened, and requested to be transferred out of the male housing unit. He also testified that the guards could hear the verbal threats that were repeatedly being made against him. (#42-1 at p.45)

According to Mr. Mero's deposition testimony, Jail officials asked him if he would like to be moved to a single-man cell in the male housing unit, but also said they could not promise him that urine would not be poured into a single-man cell. (#42-1 at pp.38-39) Mr. Mero testified that he neither declined nor accepted the offer. (#42-1 at pp.12, 38-39)

Mr. Mero further testified that a few days after the first incident, an unidentified inmate poured urine into his cell through the "bean hole."[2] (#42-1 at p.5) Mr. Mero wrote another grievance, again requesting that he be transferred out of the male housing unit. He alleges that, although he was removed from the male housing unit for several

---

[1] The Court notes that, in his original complaint, Mr. Mero alleges that he wrote a grievance concerning the alleged threats prior to the urine being poured into his cell.

[2] Mr. Mero explained that the "bean hole" is the opening in the cell door where food trays are usually served.

hours, Defendant Branscom told him that he could not be transferred.[3] (#42-1 at pp.46-47) Mr. Mero alleges that he continued to inform County Jail officials about threats against him, but those officials took no action to remedy his situation.[4]

Several days later, after inmates had been out of their cells for recreation time, an inmate located on the top tier, poured urine onto Mr. Mero and Defendant Webb. (#42-1 at p.6) After Mr. Mero was allowed to shower, he was dashed with urine a second time. Following that incident, Mr. Mero was moved to a one-man observation cell in the misdemeanor pod. (#42-1 at p.48) He remained there until he was transferred out of the Jail. (#42-1 at p.48)

In his deposition testimony, Mr. Mero stated that Defendants Garcia and Webb tried to have him removed from the male housing unit. (#42-1 at p.15) In addition, he believed that Defendant Branscom tried to get him moved to the other side of the County Jail based on the threats that Mr. Mero was receiving. (#42-1 at p.54) Mr. Mero explained that these Defendants could not have him removed from the male housing unit

---

[3] In his complaint, Mr. Mero alleges that Defendants Garcia and Webb also told him that he could not be transferred out of the male housing unit.

[4] It is undisputed that Mr. Mero was unable to clean his cell for six hours after the second incident. (#42-1 at p.55)

because their Lieutenant, Defendant Furgason,[5] had ordered that he not be transferred. (#42-1 at pp.15, 46)

Based on the status of the record at this time, the Court cannot grant judgment as a matter of law in the Defendants' favor. Defendants argue that there was no substantial risk of serious harm because Mr. Mero did not specifically identify the inmate (or inmates) who threatened to harm him. They also contend that, because the incidents were not carried out by the same person and none resulted in physical harm to Mr. Mero, he cannot establish the objective element of this claim. Not so.

Mr. Mero testified that he specifically informed Defendants Garcia, Webb, Stone, and Branscom that inmates were threatening him. In addition, Mr. Mero testified that these Defendants could hear the threats as they were being made. These Defendants, however, did not have Mr. Mero transferred out of the male housing unit even after inmates had carried out several of their threats. Fortunately, Mr. Mero was not harmed more seriously, but being doused repeatedly with urine over the course of several days is not "harmless."

Defendants also argue that Mr. Mero cannot prove that any of the Defendants disregarded an excessive risk to his safety because Mr. Mero "could not identify the specific risk." (#41 at p.6) The Supreme Court has held that a jail official cannot

---

[5] Although Defendant Furgason is identified as identified Ferguson on the docket sheet, the Defendants identify this Defendant as Lieutenant John Furgason. Accordingly, he will be identified as Defendant Furgason in this Order.

"escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Farmer*, 511 U.S. at 843, 114 S.Ct. 1970. Again, Mr. Mero testified that he repeatedly notified the Defendants that he was being threatened and that he feared for his safety. Even if Mr. Mero could not identify the particular inmate (or inmates) who were making threats, it is undisputed that urine was poured into Mr. Mero's cell on more than one occasion over a period of at least several days. Based on the record, there is evidence that the Defendants should have been aware that Mr. Mero's continued incarceration in the male housing unit posed a risk to his safety.[6]

    C.    Defendant Furgason

Defendants argue Defendant Furgason is entitled to summary judgment because Mr. Mero bases his claims against him on his position as a supervisor. They further contend that Mr. Mero has not alleged sufficient facts to support a constitutional claim against Defendant Furgason and that claims against this Defendant are based on "speculation and unattested hearsay." (#41 at p.10)

---

[6] The Defendants also argue that verbal threats do not rise to the level of a constitutional violation. While it is true that a prison or jail guard may not be constitutionally liable for threatening an inmate, that is not the situation here. See *Martin v. Sargent*, 780 F.2d 1334 (8th Cir. 1985) and *McDowell v. Jones*, 990 F.2d 433 (8th Cir. 1993).

In his deposition, Mr. Mero testified that after Defendant Webb informed Defendant Furgason about the threats, Defendant Furgason told Defendant Webb to, "leave him back there." (#42-1 at p.46) Although Defendants are correct that this statement is hearsay and may not be considered when ruling on the pending summary judgment motion, Mr. Mero also explains that when he was temporarily removed from the male housing unit, he had a conversation with Defendant Furgason. According to Mr. Mero, Defendant Furgason wanted Mr. Mero to be shackled and chained while he was temporarily removed from the male housing unit. In addition, Defendant Furgason shut Mr. Mero's bean hole and told him that if he did not like it, he could go back to the male housing unit. (#42-1 at p.46) Finally, Defendant Furgason told Mr. Mero that he did not care if Mr. Mero sued him. (#42-1 at p.46) The Court finds it disingenuous for the Defendants to argue that Defendant Ferguson was unaware of Mr. Mero's situation when he apparently was involved in Mr. Mero's temporary transfer out of the male housing unit and was responsible for the conditions of his housing during that time.

In addition, Mr. Mero specifically alleged and testified that he wrote multiple grievances regarding the alleged threats that were being made. Based on the current status of the record, it is unclear who received and responded to those grievances. Defendants did not present those grievances or any of the Defendants' affidavits to the Court in support of their motion. As a result, based on the current record, the Court cannot conclude as a matter of law that Defendant Furgason is not liable.

### D. Physical Injury

The Defendants also argue that because Mr. Mero did not suffer a physical injury, he is not entitled to compensatory damages. The Defendants are correct. There are three categories of monetary damages that a prevailing party can recover in cases filed under 42 U.S.C. § 1983: nominal, actual (compensatory), and punitive. Nominal damages are appropriate when it is not possible to place a monetary value on a plaintiff's damages. *Cowans v. Wyrick*, 862 F.2d 697 (8th Cir. 1988). Actual (compensatory) damages compensate a person for injuries caused by the deprivation of constitutional rights. *Memphis Community School Dist. v. Stachura*, 477 U.S. 299 (1986). Punitive damages are awarded for the sole purpose of punishing a defendant and deterring future misconduct.

Here, even if the Defendants violated Mr. Mero's federally protected rights, he did not suffer any physical injury as a result of their conduct. The law is settled that an inmate cannot recover compensatory damages for emotional injury alone. See 42 U.S.C. § 1997e(e). Accordingly, Mr. Mero's claims for compensatory damages are dismissed. It is possible, however, that he will be able to recover nominal and punitive damages, depending on the evidence.

### E. Qualified Immunity

In determining whether an official claiming qualified immunity acted with deliberate indifference, the Court must determine whether it was objectively reasonable

for the official to believe that his conduct would not violate an inmate's clearly established eighth amendment right. *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). Although "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm," *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998) (internal quotation omitted), based on Mr. Mero's testimony, it appears that Defendants Garcia, Webb, Branscom, and Stone appreciated the risk to Mr. Mero, as could a reasonable juror. According to Mr. Mero's testimony, Defendants Webb and Branscom told Mr. Mero that they would talk to their Lieutenant (Defendant Furgason) about having him transferred. Based on the evidence presented so far, it is unclear whether these conversations ever occurred or what was actually stated during any such conversation. If a jury could conclude that these Defendants were aware of a substantial risk of harm to Mr. Mero, then it could conclude that their failure to notify their Lieutenant could support a deliberate-indifference claim. Such deliberate indifference would violate clearly established law that establishes a jail official's duty to protect inmates from substantial risks of serious harm in certain situations. *Farmer*, 511 U.S. at 828.

Further, with regard to Defendant Furgason, it is apparently disputed whether he knew of threats to Mr. Mero's safety. If he did not know of any threat, he is not liable.

Because the facts remain in dispute, though, the Court cannot determine that Defendant Furgason's conduct complied with clearly established law.

F.     Retaliation Claim

To prove a retaliation claim, a prisoner must present evidence that: he engaged in constitutionally protected activity; defendants took adverse action against him that would chill a person of ordinary firmness from engaging in that activity; and retaliation was the actual motivating factor for the adverse action.  *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007); *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004).  The test for determining whether there was a threat of retaliation is whether a defendant's acts or statements, "would chill a person of ordinary firmness from continuing in the protected activity." *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) (citing *Revels v. Vincenz*, 382 F.3d 870, 876 (2004)).

Here, Mr. Mero has failed to allege or provide any evidence that the Defendants took any adverse action against him for engaging in any constitutionally protected activity.  As a result, Defendants are entitled to judgment as a matter of law on Mr. Mero's retaliation claim.

**III.    Conclusion:**

The Defendants' motion for summary judgment (#40) is GRANTED in part, and DENIED in part.  Mr. Mero's retaliation claim and his claim for compensatory damages are DISMISSED, with prejudice.

IT IS SO ORDERED this 21st day of March, 2014.

_____
UNITED STATES MAGISTRATE JUDGE